McKinney, J.,
delivered the opinion of the Court.
This was an action on the case brought by Clen- *294 dening for tbe seduction of bis daughter. Yerdict and judgment were rendered for tbe plaintiff, for $7,500, and the case is brought here by an appeal in error.
It is alleged in behalf of the plaintiff in error, that in the progress of the trial various errors intervened in the admission and rejection of evidence, and in the determinations of the Court, in regard to the effect of the evidence, as also in the instructions given to the jury. But the chief error relied upon for the reversal of the judgment, is the refusal of the Court to grant a new trial for the cause disclosed in the affidavits produced after verdict.
'The case is a peculiar one in all its circumstances. The plaintiff’s daughter was examined as a witness on the trial. From her testimony it appears that Thompson, the defendant, was a married man, whose residence was within half a mile of the plaintiff’s; that the families w-ere intimate, and defendant was the family physician of plaintiff’s family. That in the summer of 1854, while the witness was temporarily an inmate of defendant’s family, an illicit intercourse commenced between the defendant and herself, which was continued up to the first of September, 1857 — a period of more than three years — when she discovered that she had become pregnant; and on the 8th of June, 1858, was delivered of a child, of which defendant was the father. She further stated that, upon informing the defendant of her condition, he proposed to give her $100 if she would swear the child to one Peter M. House, who had been visiting her as a suitor; and on her refusal to do so, he proposed that she should take some chemical preparation to destroy the child, and Afterwards sent her a liquid *295 preparation in a phial, designed to produce an abortion, accompanied with a note urging her to take it, as she would not swear the child to House. That she took one dose and it made her so sick she threw the rest away.
Numerous witnesses were examined on both sides as to the general character of plaintiff’s daughter for truth and chastity. The witnesses for the plaintiff seem to have heard nothing prejudicial to her reputation previous to her criminal intercourse with the defendant. But some of the witnesses on the other side state, that, before the summer of 1854, the time when it is alleged her intercourse with the defendant commenced, her general reputation for chastity was bad.
One witness (George Sarver) states, that, at a camp-meetmg, in 1858, he had sexual intercourse with her, at her own solicitation. Other witnesses detail instances of indelicacy of behavior on her part, and of liberties with her person by young men, tolerated by her, utterly revolting to female delicacy and decency.
This much of the evidence in relation to the conduct and character of the defendant, and the person seduced, it has been thought proper to state, in view of the question of damages hereafter to be noticed.
1. It is insisted that the Court erred in admitting any evidence of a criminal connection between the defendant and the plaintiff’s daughter beyond the period of three years from the commencement of the present' action.
We do not think so. The whole of the defendant’s intercourse with the person seduced, and all the circumstances of the case, are to be regarded as an entire transaction, and are admissible as evidence to the jury, *296 as well in view of tbe question whether the defendant ■is the father of the child, as to show the extent of the ■injury in aggravation of the damages.
2. The Court refused to admit evidence of the general bad character of the plaintiff’s daughter after her seduction. In this, we think, the Court did not err. It is true that the general character of the person seduced, for chastity, is involved in the issue; and if bad, the defendant may avail himself of it in mitigation of the damages. But this inquiry must be restricted to her general reputation as to chastity at the time of, or before her seduction. The necessary result of her seduction would be the ruin of her reputation in the public estimation; and it would be monstrous to hold that the defendant might avail himself of that ruined reputation, caused by his own wrong, to lessen the claim of her injured parent to damages. The proposition is too revolting to our reason and sense of justice to admit of discussion.
3. The defendant proposed to prove, on cross-examination of the plaintiff’s daughter, that she had heard her mother charge her father, the plaintiff, with adultery, and that he admitted the charge to be true. The Court properly excluded this evidence. We have recently held, in Reed v. Williams, that it is admissible to show that the plaintiff is a man of' profligate character and dissolute habits; but that it must be done by evidence of his general reputation, and not of particular instances.
4. The defendant also proposed to prove that the general reputation of the plaintiff’s wife, and mother of the person seduced, as to chastity, was bad. This evidence the Court also properly rejected. The general *297 reputation and standing of the family may be shown by the plaintiff, as it seems, with a view to enhance the damages; and, upon the same principle, it would seem that such evidence ought to be admitted on the part of the defendant to diminish the damages. But the reputation of a particular member of the family, other than the plaintiff or the person seduced, cannot be inquired into.
5. The next and only remaining error which we deem it necessary to consider, is the refusal of the Court to grant a new trial.
It appears from the bill of exceptions, that after the examination had been closed on both sides, and after two arguments on each side had been made to the jury, an application was made to the Court on behalf of the plaintiff to examine Peter M. House as a witness, for the purpose, first, of .discrediting George Sarver, a witness examined by the defendant, who proved that he had had sexual intercourse with plaintiff’s daughter prior to her seduction by the defendant; and, in the next place to relieve himself from the imputation made upon him in the evidence and in the argument, of being the father of the child charged upon the defendant. The Court admitted said witness. And he stated, in substance, that in July or August, 1858, Sarver had stated, in a conversation with witness, ‘‘that he never had criminal connection with plaintiff’s daughter, and that he would lay his hand on the Bible and swear it.” Witness likewise stated that he himself never had sexual intercourse with her. But, on cross-examination, he admitted that he had visited her as a suitor, and that he had taken various liberties with her person, which need *298 not be here stated. He likewise stated that he had been summoned as a witness for plaintiff, but had got off from attending and had gone to the country, and returned again to the court house during the progress of the argument.
After the examination of House the Court offered to postpone the trial as long as might be necessary to afford the defendant opportunity to produce witnesses to rebut the testimony of House. But the defendant’s counsel waived the offer, and consented to proceed with the trial, upon its being admitted by plaintiff’s counsel that Sarver could prove a good character — defendant’s counsel admitting, at the same time, that House could also prove a good character. It should have been remarked that the defendant was absent. He left town after the evidence was closed and went to the country to visit his wife, who was sick, as he alleged, and did not return until after the verdict was rendered.
The defendant produced the affidavits of several persons, setting forth the repeated and positive declarations of House to the effect that he had had criminal connection with the plaintiff’s daughter for a period of twelve or eighteen months; that she was with child by him, and that he expected he would have to leave the country on that account; and that he had offered her a sum of money to swear the child to the defendant, Thompson. Other matters stated in the affidavits we deem unnecessary to notice. We likewise pass by, without notice, the counter affidavits produced by the plaintiff.
The difficulty in the way of holding the Circuit-Judge to have erred in refusing a new trial upon the *299 foregoing facts, grows out of tbe refusal of tbe defendant’s counsel to accept tbe offer, so fairly and properly made by tbe Court, to give time to introduce rebutting evidence.
In ordinary cases, perhaps, a party ought to be concluded by such an act of bis counsel in bis absence, however rash or unadvised it may have been on tbe part of counsel. But under the extraordinary circumstances of this particular case, we think tbe defendant should not be denied a new trial on that ground. Tbe counsel swears that be was wholly ignorant that any rebutting evidence could be produced. And tbe defendant can scarcely be charged with negligence in being absent, as it was not reasonably to have been expected that, after tbe close of the evidence and after the argument was nearly concluded, new testimony would have been admitted; and especially tbe testimony of a witness who bad been .summoned by the plaintiff, and discharged without examination. And we cannot forbear to remark, that the admission of this witness, under all the circumstances, was perhaps an exercise of discretion scarcely to be vindicated by the most liberal practice. But granting that he was properly admitted, when we look to the time and circumstances of his admission, the purposes for which he was introduced, the great importance of his testimony, if credited by the jury, as it must have been from the verdict, the very questionable attitude occupied by him from his own admissions on cross-examination, and, still more, the force of the affidavits to destroy his claims to credit altogether, we feel constrained to say that the Court erred in refusing a new trial. And we arrive at this conclusion the more *300 readily, perhaps, because we think the damages are excessive, to a most unreasonable and extravagant degree. Whether upon this ground alone, we should feel warranted in setting aside the verdict, is a question not necessary to be considered. We are not by any means inclined to discourage exemplary damages in cases of this kind, wherever a proper case for such damages is made out. But it will not do to permit juries to place all females ' upon the same common level, and to lose sight of all those'* just distinctions, founded upon the conduct, character, and social position of the parties, in view of which the damages, in each ' particular case, ought to be estimated.
The case before .us, so far as the plaintiff and his daughter are concerned, is certainly not a very proper •one for unusual damages. But the aggravations and •enormities of the defendant’s conduct deserved to be marked by the jury. Nevertheless, we think the damages were altogether disproportioned to the whole case.
Judgment reversed.